Kenneth A. Sansone, SBN 319982
ksansone@slenvironment.com
Seth D. Mansergh, SBN 274892
smansergh@slenvironment.com
SL ENVIRONMENTAL LAW GROUP, PC
175 Chestnut Street
San Francisco, CA 94133
Telephone: (415) 348-8300
Facsimile: (415) 348-8333

Attorneys for Plaintiffs CITY OF CORONA and
CORONA UTILITY AUTHORITY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF CORONA and CORONA UTILITY AUTHORITY, <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY; SHELL OIL COMPANY, also doing business as SHELL CHEMICAL COMPANY; FMC CORPORATION; NUTRIEN AG SOLUTIONS, INC., formerly known as CROP PRODUCTION SERVICES, INC.; and DOES 1 through 300, INCLUSIVE, <br><br> Defendants. | Case No. 5:20-cv-02562 <br><br> **PLAINTIFFS' COMPLAINT FOR DAMAGES AND OTHER RELIEF:** <br><br> **(1) STRICT PRODUCTS LIABILITY (DESIGN DEFECT);** <br> **(2) STRICT PRODUCTS LIABILITY (FAILURE TO WARN)** <br> **(3) NUISANCE;** <br> **(4) TRESPASS; and** <br> **(5) NEGLIGENCE.** <br><br> **WITH DEMAND FOR JURY TRIAL** |

Plaintiffs the CITY OF CORONA and the CORONA UTILITY AUTHORITY

hereby allege as follows, based on information and belief and investigation of counsel:

# I.    SUMMARY OF THE CASE

1.    Plaintiff the CITY OF CORONA (the "City") owns, operates, and controls a water enterprise that provides drinking and other water to residents, businesses and others in and around Corona, California (collectively the "Service Area").  City also owns, operates, and controls a wastewater enterprise that provides wastewater treatment services within the Service Area.  City leases the water enterprise and wastewater enterprise ("Water System") to Plaintiff CORONA UTILITY AUTHORITY (the "CUA"), a joint powers authority, duly organized and existing under the laws of California.  The CUA has contracted with the City to appoint and retain the City as the manager and operator of the Water System.

2.    Plaintiffs seek to recover by this action the substantial costs necessary to protect the public and restore several of City's water supply wells, located in Corona, California, which are contaminated by the chemical 1,2,3-trichloropropane ("TCP").

3.    TCP is a highly toxic substance that is an ingredient, component, constituent, contaminant and/or impurity in certain commercial products.  In years past, TCP, and/or products containing TCP, were applied, released, discharged and/or disposed of by others in the vicinity of certain drinking water production wells owned and operated by City.  TCP has migrated through the subsurface and into the groundwater, and now contaminates the water pumped from City's wells.  Because of the risks that TCP poses to human health, the State of California has banned TCP in drinking water except at very low levels.

4.    The defendants in this action are the manufacturers, distributors and releasers of the TCP and/or TCP-containing products that caused the contamination of City's wells.  Among other things, the manufacturer defendants knowingly and willfully manufactured, promoted, and sold TCP and products containing TCP, when they knew or reasonably should have known that this harmful compound would reach groundwater, pollute drinking water supplies, render drinking water unusable and

1    unsafe, and threaten the public health and welfare, as it has done with respect to City's

2    water supply.

3        5.    Plaintiffs file this lawsuit to recover compensatory and all other damages,

4    including all necessary funds to compensate Plaintiffs for the costs of designing,

5    constructing, installing, operating and maintaining the treatment facilities and

6    equipment required to comply with state and federal safe drinking water laws and to

7    remove TCP from its water supply, and to ensure that the responsible parties bear such

8    expense, rather than Plaintiffs and their ratepayers.

9                        **II.   THE PARTIES**

10       6.    City is a California municipality.  City owns and operates a water system

11    for the benefit of the public, which includes, among other elements, drinking water

12    production wells which draw from one or more groundwater aquifers, associated

13    pumping, storage, treatment and distribution facilities and equipment, all of which

14    will be referred to collectively in this Complaint as Plaintiffs' "Water System."  City

15    provides potable water through its Water System to residents and businesses in and

16    around the Service Area.  Among other things, City's Water System includes the right

17    of City to extract and use groundwater for drinking water supplies from its wells.  City

18    has a significant property interest in the waters it extracts and uses from its wells.  The

19    past, present and continuing contamination of such waters by TCP constitutes physical

20    injury to such waters for which City is entitled to, and City hereby does, seek damages

21    and other appropriate relief.

22       7.    The following defendants designed, manufactured, formulated, marketed,

23    promoted, distributed, sold (directly or indirectly), applied, discharged, disposed of

24    and/or released the TCP and/or products containing the TCP that contaminates City's

25    wells and water supply:

26       8.    Defendant THE DOW CHEMICAL COMPANY ("Dow Chemical") is a

27    Delaware corporation with its principal place of business in Midland, Michigan,

28    which at all times relevant to this action was doing business in California.

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND OTHER RELIEF**

9. Defendant SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL COMPANY ("Shell") is a Delaware corporation with its principal place of business in Houston, Texas, which at all times relevant to this action was doing business in California.

10. Defendant FMC CORPORATION ("FMC") is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania, which at all times relevant to this action was doing business in California.

11. Defendant NUTRIEN AG SOLUTIONS, INC., formerly known as CROP PRODUCTION SERVICES, INC., itself and as successor-in-interest to Western Farm Service, Inc. (formerly known as Cascade Farm Services, Inc.) and to UAP Distribution, Inc. (also doing business as United Agri Products West, UAP West, and United Agri Products, and as successor in interest to United Agri Products Financial Services, Inc.) ("Nutrien") is a Delaware corporation with its principal place of business in Loveland, Colorado, which at all times relevant to this action was doing business in California.

12. The names and capacities, whether individual, corporate or otherwise, of defendants named herein as DOES 1 through 300, inclusive, are unknown at this time to Plaintiffs who therefore sue said defendants by such fictitious names. Plaintiffs will amend the Complaint to show the true names and capacities of said defendants if and when their identities and capacities have been ascertained.

13. The defendants named in paragraphs 8-11 above and defendant DOES 1 through 300, inclusive, are referred to collectively herein as "Defendants."

14. Defendants Dow and Shell and DOES 1 through 100, inclusive, are referred to collectively herein as "Manufacturer Defendants."

15. Defendants FMC and Nutrien and DOES 101 through 200, inclusive, are referred to collectively herein as "Distributor Defendants."

16. DOES 201 through 300, inclusive, are referred to collectively herein as "Owner/Operator Defendants."

17.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

### III.    JURISDICTION AND VENUE

18.     This court has jurisdiction over this matter because Plaintiffs are citizens of a different state from each of the defendants and the amount in controversy, in excess of interest and costs, exceeds $75,000.

19.     This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in California or otherwise intentionally avails or availed itself of the California market either through the distribution or sale of products containing TCP in the State of California or by having a manufacturing, distribution or other facility located in California so as to render the exercise of jurisdiction over it by courts in this state consistent with traditional notions of fair play and substantial justice.

20.     Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district, and because the property that is the subject of the action is situated in this district.

### IV.   ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

**A.     The Contaminant: TCP.**

21.     TCP does not occur naturally.  Rather, TCP is and/or was produced as a byproduct of certain chemical processes used to produce allyl chloride, epichlorohydrin and synthetic glycerin, which, in turn, are and/or were used in connection with the manufacture of certain commercial products.  TCP is also known

1    as allyl trichloride, glycerol trichlorohydrin, and/or trichlorohydrin.  Because only

2    certain large-scale industrial chemical processes involving heat and chlorine produce

3    TCP, only a few companies in the United States are the source of TCP.

4        22.    TCP is and/or was, among other things, an inert ingredient, impurity

5    and/or manufacturing byproduct in certain soil fumigant products used to control

6    nematodes (microscopic worms that infest plant roots) that were marketed primarily,

7    although not exclusively, from the 1940s through the 1980s.  The TCP present in

8    TCP-containing soil fumigants had, and has, no beneficial purpose in connection with

9    the application of such soil fumigants to crops.

10       23.    TCP is and/or was contained in certain other non-agricultural chemical

11   products, including, but not limited to, some solvents and extractive agents.

12       24.    TCP has unique characteristics that cause extensive environmental

13   contamination and a corresponding threat to the public health and welfare.  In

14   particular, TCP does not readily adsorb (i.e., stick) to soil particles.  Rather, once TCP

15   is applied, discharged, disposed of, or otherwise released into or onto land, it is readily

16   transported through the subsurface and into groundwater.  In addition, TCP is known

17   to be persistent, *i.e.*, it does not readily biodegrade or chemically degrade naturally in

18   the subsurface.  There is a lengthy delay, based on site-specific factors, between the

19   time TCP or products containing TCP are released into the subsurface environment

20   and the time TCP accumulates in groundwater in sufficient quantities and locations to

21   contaminate public drinking water resources.  In short, TCP migrates readily through

22   soil and groundwater, resists natural degradation, and is difficult and costly to remove

23   from groundwater.

24       25.    TCP presents a significant threat to public health and welfare.  TCP is

25   known to cause liver and kidney damage and blood disorders in animals exposed to

26   TCP via ingestion.  TCP has also been shown to cause cancer in animals, and is

27   known to the State of California to cause cancer for purposes of the Safe Drinking

28   Water and Toxic Enforcement Act of 1986.

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND OTHER RELIEF**

**B.     Regulatory Standards Applicable To TCP.**

26.     No federal or state agency has approved TCP as an additive to drinking water.  No federal or state agency has approved releasing or discharging TCP to groundwater.

27.     The Division of Drinking Water ("DDW") of the California State Water Resources Control Board ("SWRCB"), formerly part of the California Department of Public Health ("DPH"), is the state agency responsible for regulating public water systems, including Plaintiffs' Water System.

28.     At the request of DPH, the California Office of Environmental Health Hazard Assessment finalized a Public Health Goal ("PHG") for TCP in drinking water of 0.0000007 mg/L, or 0.7 parts per trillion.  PHGs for carcinogens or other substances that may cause chronic disease are based solely on health effects and are set at the level at which the State has determined, based on the best available toxicological data in the scientific literature, the substance does not pose any significant risk to health.

29.     The SWRCB adopted a Maximum Contaminant Level ("MCL") for TCP in drinking water in the amount of 0.000005 mg/L, or 5 parts per trillion.  An MCL is a legal standard that establishes the maximum permissible level of a contaminant in drinking water.  City, as the owner and operator of the Water System, is required to comply with the MCL for TCP.

**C.     The Manufacturer Defendants' Knowledge of TCP's Hazards.**

30.     The Manufacturer Defendants, each of whom has promoted the use of TCP and/or products containing TCP (collectively referred to hereinafter as "TCP Products"), knew or should have known of the grave harm and threat to public health and welfare and the environment represented by proliferating use of this compound, including (among other things): widespread pollution of groundwater with TCP, contamination of public and private drinking water supplies by this harmful compound, drinking water supplies being rendered unfit and unusable for

1    consumption and increased costs to public water suppliers and their customers.

2        31.    The manufacturers of TCP Products had a duty—and breached their

3    duty—to evaluate and test such Products adequately and thoroughly to determine their

4    environmental fate and transport characteristics and potential human health and

5    environmental impacts before they produced and sold such Products.  They also had a

6    duty—and breached their duty—to minimize the environmental harm caused by TCP.

7    The Manufacturer Defendants, and each of them, failed to adequately evaluate and test

8    their TCP Products, or otherwise ensure that TCP would not contaminate drinking

9    water.  As a direct, indirect and proximate result of these failures, TCP contaminated,

10   and continues to contaminate, the drinking water supply of Plaintiffs' Water System.

11       32.    At all times relevant to this action, the Manufacturer Defendants knew, or

12   reasonably should have known, among other things, that: (a) TCP is toxic; and (b)

13   when applied, discharged, disposed of, or otherwise released into or onto land, TCP

14   readily migrates through the subsurface, mixes easily with groundwater, resists natural

15   degradation, renders drinking water unsafe and/or non-potable, and requires

16   significant expenditures to remove from public drinking water supplies.

17       33.    Despite knowing or having reason to know that long-term groundwater

18   contamination, pollution of water supplies, and threats to public health and safety

19   were inevitable consequences of the foreseeable and intended uses of their TCP

20   Products without proper precautionary measures, including but not limited to adequate

21   warnings, the Manufacturer Defendants nonetheless promoted, marketed and/or sold

22   TCP Products in California and elsewhere.

23       34.    At all times relevant herein, the Manufacturer Defendants, and each of

24   them, knew or should have known that feasible measures could have been

25   implemented to remove or substantially reduce the amount of TCP in their finished

26   TCP-containing soil fumigant products without decreasing the ability of these

27   products to control nematodes, but they failed to implement such measures.

28       35.    At all times relevant herein, the Manufacturer Defendants, and each of

1    them, knew or should have known that TCP is a hazardous waste which should be

2    disposed of safely and separately from non-hazardous wastes.  Nonetheless, the

3    Manufacturer Defendants caused or allowed TCP – a hazardous waste product created

4    by their chemical manufacturing processes – to be included in their products,

5    including soil fumigant products.  The Manufacturer Defendants then instructed users

6    to apply products containing TCP to agricultural fields, where these Defendants knew

7    or should have known that TCP would contaminate groundwater.

8        36.    Adequate warnings regarding the known and foreseeable risks of TCP

9    could have prevented or mitigated the contamination and resulting damages alleged

10   herein.  Despite knowing or having reason to know of the risks to public drinking

11   water resources posed by the discharge, disposal or release into or onto land of TCP

12   Products, the Manufacturer Defendants unreasonably failed to provide any adequate

13   warnings regarding the known and foreseeable risks of TCP to customers, end-users,

14   regulators, public officials and/or the public, including Plaintiffs.

15       37.    In addition to the negligent and/or reckless conduct alleged herein, the

16   Manufacturer Defendants, by agreement and/or tacit understanding among them, each

17   knowingly pursued or took an active part in a common plan, design and/or conspiracy

18   to market and/or promote products they knew to be dangerous to the environment.  In

19   particular, these Defendants engaged in joint activity for the specific purpose of

20   suppressing, concealing, and/or minimizing information regarding the toxicity and

21   persistence of TCP.  These Defendants' common plan, design and/or conspiracy, and

22   the acts taken in furtherance of such common plan, design and/or conspiracy, are a

23   direct and proximate cause of the TCP contamination in Plaintiffs' Water System.

24   **D.    The Impact of TCP on Plaintiffs' Water System.**

25       38.    TCP has been detected in varying amounts at varying times in water

26   extracted from certain of City's wells located in the Service Area, (referred to herein

27   as the "Contaminated Wells").  TCP has been detected and/or is present in the

28   Contaminated Wells at levels substantially above the applicable MCL.  The detection

and/or presence of TCP, and the threat of further detection and/or presence of TCP, in the Contaminated Wells in varying amounts and at varying times has resulted in, and will continue to cause, significant injuries and damages to the Contaminated Wells and Plaintiffs' Water System.

39.    The injuries to City caused by Defendants' conduct as alleged herein constitute an unreasonable interference with, and physical damage to, the limited subterranean supplies of fresh drinking water on which City's Contaminated Wells depend.  City's interest in protecting the quality of its limited drinking water supplies constitutes a reason personal for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

**E.    Summary of Allegations.**

40.    At all times relevant to this action:

(a)    The Manufacturer and Distributor Defendants, and each of them, sold, exchanged, supplied, distributed, delivered or otherwise provided (directly or indirectly) TCP Products to the Owner/Operator Defendants.  Such sales, exchanges, supplies, distributions, deliveries and/or other provisions of TCP Products to the Owner/Operator Defendants occurred over time.

(b)    TCP Products purchased or otherwise acquired (directly or indirectly) from the Manufacturer and/or Distributor Defendants, and each of them, by the Owner/Operator Defendants were applied, discharged, disposed of or otherwise released into or onto lands in the vicinity of City's Contaminated Wells.  Such applications, discharges, disposals and/or releases of TCP occurred at various times, in varying quantities and in different locations.

(c)    TCP takes time to migrate from points of application, discharge, disposal and/or release to locations within the subsurface at which

it has an appreciable impact on groundwater.  TCP has over time migrated in the subsurface from various application, discharge, disposal and/or release points at or near the surface on lands in the vicinity of City's Contaminated Wells, causing pollution, contamination, and substantial and continuing damage to those Wells and the groundwaters that supply them, causing appreciable injury to Plaintiffs and damaging Plaintiffs at such times and in amounts to be proved at trial.

41.    At all times relevant to this action, TCP Products manufactured, sold, and/or released by Defendants caused and/or contributed to the TCP contamination alleged herein.

42.    At all times relevant to this action, the TCP Products purchased or otherwise acquired by the Owner/Operator Defendants were TCP Products manufactured, marketed, distributed and/or sold by one or more of the Manufacturer and Distributor Defendants named herein.

43.    Defendants, and each of them, are jointly and severally liable for the damages alleged herein.

## FIRST CAUSE OF ACTION
### (Strict Products Liability Based On Defective Design
### Against The Manufacturer and Distributor Defendants)

44.    Plaintiffs reallege each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

45.    The Manufacturer and Distributor Defendants, and each of them, designed, manufactured, formulated, promoted, marketed, distributed, and/or sold TCP Products.

46.    The Manufacturer and Distributor Defendants, and each of them, knew and/or should have known that such TCP Products were to be purchased and used without inspection for defects.

47.    TCP Products purchased or otherwise acquired (directly or indirectly) from the Manufacturer and/or Distributor Defendants, and each of them, by the Owner/Operator Defendants were applied, discharged, disposed of or otherwise released into or onto lands in the vicinity of City's Contaminated Wells.

48.    The TCP Products purchased by the Owner/Operator Defendants were used in a reasonably foreseeable manner and without substantial change in the condition of such Products.

49.    Soil fumigant products containing TCP are, and at all relevant times were, designed to be applied, injected and/or released directly into soil. Leaks, spills and releases of soil fumigant products containing TCP were also inherent in the normal, foreseeable uses of such products, including the transportation, loading, unloading, storage, handling, and application of such products.

50.    The Manufacturer and Distributor Defendants knew, or should have known, that use of TCP Products other than soil fumigants in their intended manner would result in the spillage, discharge, disposal or release of TCP into or onto land.

51.    The TCP Products used in the vicinity of City's Contaminated Wells were defective in design and unreasonably dangerous products because, among other things:

(a)    The TCP contained in soil fumigant products containing TCP served no beneficial purpose.

(b)    TCP causes extensive groundwater contamination when it, or products containing it, are used in their foreseeable and intended manner.

(c)    TCP poses significant threats to the public health and welfare and the environment.

(d)    Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of TCP.

52.    At all times relevant to this action, TCP Products were dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the benefit of the presence of TCP in TCP products, if any, did not outweigh the risk of harm to public health and welfare and the environment posed by the presence of TCP in TCP Products.

53.    As a direct and proximate result of the defects previously described, City's Contaminated Wells and the groundwaters that supply them have been, and continue to be, contaminated with TCP, causing physical damage to such groundwaters and causing Plaintiffs significant injury and property damage. Restoration, repair and/or remediation of the property damage alleged herein has required Plaintiffs, and will continue to require Plaintiffs, to incur substantial costs and expenses in an amount to be proved at trial.

54.    The Manufacturer and Distributor Defendants are strictly, jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages in this action.

55.    The Manufacturer Defendants knew and/or should have known that it was substantially certain that their alleged acts and omissions described above would cause injury and damage, including TCP contamination of drinking water supplies. The Manufacturer Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice.  Such conduct is reprehensible, despicable, and was performed to promote sales of TCP Products and maximize profits, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon health, property and the environment, including City's Water System.  Therefore, Plaintiffs request an award of exemplary damages in an amount that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.  After the completion of additional investigation and discovery, Plaintiffs may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants

if warranted by the facts.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## SECOND CAUSE OF ACTION
**(Strict Products Liability Based On Failure To Warn
Against The Manufacturer And Distributor Defendants)**

56.    Plaintiffs reallege each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

57.    The Manufacturer and Distributor Defendants, and each of them, designed, manufactured, formulated, promoted, marketed, distributed, and/or sold TCP Products.

58.    The Manufacturer and Distributor Defendants, and each of them, knew and/or should have known that such TCP Products were to be purchased and used without inspection for defects.

59.    TCP Products purchased or otherwise acquired (directly or indirectly) from the Manufacturer and/or Distributor Defendants, and each of them, by the Owner/Operator Defendants were applied, discharged and/or disposed of in or otherwise released into or onto lands in the vicinity of City's Contaminated Wells.

60.    The TCP Products purchased by the Owner/Operator Defendants were used in a reasonably foreseeable manner and without substantial change in the condition of such products.

61.    Soil fumigant products containing TCP are, and at all relevant times were, designed to be applied, injected and/or released directly into soil.  Leaks, spills and releases of soil fumigant products containing TCP were also inherent in the normal, foreseeable uses of such products, including the transportation, loading, unloading, storage, handling, and application of such products.

62.    The Manufacturer and Distributor Defendants knew, or should have

1  known, that use of TCP Products other than soil fumigants in their intended manner

2  would result in the spillage, discharge, disposal or release of TCP into or onto land.

3      63.    The TCP Products used in the vicinity of City's Contaminated Wells

4  were defective in design and unreasonably dangerous products for the reasons set

5  forth in Paragraph 48 above, among other things.

6      64.    Despite the known and/or foreseeable environmental and human health

7  hazards associated with the application or release of TCP Products in the vicinity of

8  subterranean drinking water supplies, including contamination of public drinking

9  water supplies with TCP, the Manufacturer and Distributor Defendants, and each of

10  them, failed to provide adequate warnings of, or take any other precautionary

11  measures to mitigate, those hazards.

12      65.    In particular, the Manufacturer and Distributor Defendants failed to

13  describe such hazards or provide any precautionary statements regarding such hazards

14  in the labeling of their TCP Products or otherwise.

15      66.    As a direct and proximate result of the Manufacturer and Distributor

16  Defendants' failure to warn of the hazards posed by application or release of TCP

17  Products in the vicinity of subterranean drinking water supplies that were, or should

18  have been, known to them, City's Contaminated Wells and the groundwaters that

19  supply them have been, and continue to be, contaminated with TCP, causing physical

20  damage to such groundwaters and causing Plaintiffs significant injury and property

21  damage.  Restoration, repair and/or remediation of the property damage alleged herein

22  has required Plaintiffs, and will continue to require Plaintiffs, to incur substantial costs

23  and expenses in an amount to be proved at trial.

24      67.    The Manufacturer and Distributor Defendants are strictly, jointly and

25  severally liable for all such damages, and Plaintiffs are entitled to recover all such

26  damages in this action.

27      68.    For the reasons set forth and specifically alleged in Paragraph 51,

28  Plaintiffs are entitled to an award of exemplary damages against the Manufacturer

Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.  After the completion of additional investigation and discovery, Plaintiffs may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

### THIRD CAUSE OF ACTION
### (Continuing Nuisance Against All Defendants)

69.     Plaintiffs reallege each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

70.     City is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System.

71.     The negligent, reckless, intentional and/or ultra-hazardous activity of Defendants, and each of them, as alleged herein, has resulted in the continuing contamination of City's Contaminated Wells and the groundwaters that supply them by TCP, and constitutes a nuisance.  Each such Defendant has caused, maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

72.     The nuisance caused, contributed to, maintained, assisted and/or participated in by Defendants, and each of them, has caused substantial injury to City's Contaminated Wells and the groundwaters that supply them, in which City has a significant property interest.

73.     The nuisance caused, contributed to, maintained, assisted and/or participated in by Defendants, and each of them, has and continues to substantially and unreasonably interfere with, obstruct and/or disturb City's right to extract, use and enjoy groundwater from its Contaminated Wells.   Plaintiffs are specially and adversely affected by the nuisance.

74.    The Manufacturer Defendants, each of whom, supplied, distributed, delivered, sold and/or otherwise entrusted (directly or indirectly) TCP Products that were applied, discharged, disposed of or otherwise released into or onto land in the vicinity of City's Contaminated Wells, engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in the creation of the nuisance alleged herein, including, but not limited to:

(a)    disposing of TCP – a hazardous waste created by the Manufacturer Defendants' manufacturing process – by causing TCP to be present in and/or failing to remove it from TCP Products which were designed to be applied to the ground;

(b)    promoting, marketing, providing product information and/or instructions for use of, TCP Products, but failing to require any different or special handling instructions or advising others to take any other precautionary measures to mitigate the known and/or foreseeable risks posed by the use of TCP Products in the vicinity of subterranean drinking water supplies, including contamination of groundwater with TCP;

(c)    providing instructions for use of TCP Products that rendered groundwater contamination a likely, if not inevitable result, of normal application or use of their TCP Products;

(d)    misrepresenting the chemical characteristics of their TCP Products and failing to disclose information regarding the TCP Products' environmental risks to regulators;

(e)    providing application equipment, advising and assisting with the application of TCP Products, sharing soil fumigant-related research with users and/or providing other forms of on-site assistance; and

(f)    participating in and materially supporting field trials and field research involving TCP Products in and around City's service area, which, in turn, helped establish the effectiveness of those TCP Products and led to the routine use of them by farmers in and around City's service area.

78.     The Distributor Defendants, each of whom, supplied, distributed, delivered, sold and/or otherwise entrusted (directly or indirectly) TCP Products that were applied, discharged, disposed of or otherwise released into or onto land in the vicinity of City's Contaminated Wells, engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in the creation of the nuisance alleged herein, including, but not limited to applying the TCP Products to the soil, providing application equipment, advising and assisting with the application of TCP Products and/or providing other forms of on-site assistance.

79.     The contamination of City's water and wells alleged herein has varied over time and has not yet ceased.  TCP continues to migrate into and enter City's Contaminated Wells.  The contamination alleged herein is reasonably abatable.

80.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, City's Contaminated Wells and the groundwaters that supply them have been, and continue to be, contaminated with TCP, causing Plaintiffs significant injury and damage.  As a direct and proximate result of these Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the TCP contamination of City's Contaminated Wells in an amount to be proved at trial.

81.     For the reasons set forth and specifically alleged in paragraph 53, Plaintiffs are entitled to an award of exemplary damages against the Manufacturer Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.  After the completion of additional investigation and discovery, Plaintiffs may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION
### (Continuing Trespass Against All Defendants)

82.    Plaintiffs reallege each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

83.    City is the owner and actual possessor of its Water System, which includes drinking water production wells, including City's Contaminated Wells, which draw groundwater from one or more aquifers.

84.    City owns, possesses and actively exercises rights to extract and use groundwater drawn from the drinking water production wells described in the preceding paragraph, including City's Contaminated Wells.

85.    Defendants, and each of them, negligently, recklessly and/or intentionally failed to properly control, apply and/or dispose of TCP Products, such that they proximately caused TCP to enter, invade, intrude upon and injure City's possession of property.

86.    The Manufacturer Defendants, each of whom, supplied, distributed, delivered, sold and/or otherwise entrusted (directly or indirectly) TCP Products that were applied, discharged, disposed of or otherwise released into or onto land in the vicinity of City's Contaminated Wells, engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in the creation of the trespass alleged herein, including, but not limited to:

(a)    disposing of TCP – a hazardous waste created by the Manufacturer Defendants' manufacturing process – by causing TCP to be present in and/or failing to remove it from TCP Products which were designed to be applied to the ground;

(b)    promoting, marketing, providing product information and/or instructions for use of, TCP Products, but failing to require any different or special handling instructions or advising others to take any other precautionary measures to mitigate the known and/or foreseeable risks posed by the use of TCP Products in the vicinity of subterranean drinking water supplies, including

1  contamination of groundwater with TCP;

2         (c)    providing instructions for use of TCP Products that rendered

3  groundwater contamination a likely, if not inevitable result, of normal application or

4  use of their TCP Products;

5         (d)    misrepresenting the chemical characteristics of their TCP Products

6  and failing to disclose information regarding the Products' environmental risks to

7  regulators;

8         (e)    providing application equipment, advising and assisting with the

9  application of TCP Products, sharing soil fumigant-related research with users and/or

10  providing other forms of on-site assistance; and

11         (f)    participating in and materially supporting field trials and field

12  research involving TCP Products in and around City's service area, which, in turn,

13  helped establish the effectiveness of those TCP Products and led to the routine use of

14  them by farmers in and around City's service area.

15         87.    The Distributor Defendants, each of whom, supplied, distributed,

16  delivered, sold and/or otherwise entrusted (directly or indirectly) TCP Products that

17  were applied, discharged, disposed of or otherwise released into or onto land in the

18  vicinity of City's Contaminated Wells, engaged in affirmative conduct that caused,

19  contributed to, maintained and/or assisted in the creation of the trespass alleged

20  herein, including, but not limited to providing application equipment, advising and

21  assisting with the application of TCP Products and/or providing other forms of on-

22  site assistance.

23         88.    The contamination of City's water and wells alleged herein has varied

24  over time and has not yet ceased.  TCP continues to migrate into and enter City's

25  Contaminated Wells.  The contamination alleged herein is reasonably abatable.

26         89.    City has not consented to, and does not consent to, the contamination

27  alleged herein.  Defendants, and each of them, knew or reasonably should have known

28  that City would not consent to this trespass.

90.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, City's Contaminated Wells and the groundwaters that supply them have been, and continue to be, contaminated with TCP, causing Plaintiffs significant injury and damage.  As a direct and proximate result of these Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the TCP contamination of City's Contaminated Wells in an amount to be proved at trial.

91.    For the reasons set forth and specifically alleged in paragraph 53, Plaintiffs are entitled to an award of exemplary damages against the Manufacturer Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.  After the completion of additional investigation and discovery, Plaintiffs may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## FIFTH CAUSE OF ACTION
### (Negligence Against All Defendants)

92.    Plaintiffs reallege each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

93.    The Owner/Operator Defendants had a duty and breached their duty to use due care in the use, handling, application, discharge and/or disposal of TCP Products.

94.    The Owner/Operator Defendants negligently, carelessly, and/or recklessly used, handled, applied, discharged and/or disposed of TCP Products and breached their duties to use due care by applying, spilling, discharging, disposing of

1    and/or otherwise releasing TCP Products into or onto land in the vicinity of City's

2    Contaminated Wells, thus causing the TCP contamination alleged herein.

3        95.    The Manufacturer and Distributor Defendants had a duty and breached

4    their duty to use due care in the design, testing, manufacture, formulation, marketing,

5    distribution, and/or sale of TCP Products.

6        96.    The Manufacturer and Distributor Defendants also had a duty and

7    breached their duty to minimize the environmental harm caused by TCP.

8        97.    The Manufacturer and Distributor Defendants negligently, carelessly,

9    and/or recklessly designed, manufactured, formulated, handled, controlled (or the lack

10   thereof), tested (or the lack thereof), marketed, sold and/or otherwise entrusted TCP

11   Products, and breached their duty to use due care, including but not limited to the

12   following:

13           (a)    The Manufacturer Defendants failed to conduct reasonable,

14               appropriate or adequate scientific studies to evaluate the

15               environmental fate and transport and potential human health

16               effects of TCP.

17           (b)    The Manufacturer and Distributor Defendants, and each of them,

18               knew, or reasonably should have known, that: (i) TCP is extremely

19               toxic; and (ii) when applied, discharged, disposed of or otherwise

20               released into or onto land, TCP readily migrates through the

21               subsurface, mixes easily with groundwater, moves great distances,

22               resists natural degradation, renders drinking water unsafe and/or

23               non-potable and requires significant expenses to remove from

24               public drinking water supplies.

25           (c)    Despite knowing that TCP would contaminate groundwater and

26               threaten public health and welfare, the Manufacturer and

27               Distributor Defendants nonetheless supplied, marketed, sold,

28               and/or entrusted TCP Products downstream handlers, purchasers

and end-users, including the Owner/Operator Defendants.

    (d)    The Manufacturer and Distributor Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, the known and foreseeable risks posed by application, spillage, discharge, disposal or release into or onto land of such TCP Products, including contamination of groundwater with TCP, despite their knowledge of the special hazards associated with TCP.

98.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, City's Contaminated Wells and the groundwaters that supply them have been, and continue to be, contaminated with TCP, causing physical damage to such groundwaters and causing Plaintiffs significant injury and property damage. Restoration, repair and/or remediation of the property damage alleged herein has required Plaintiffs, and will continue to require Plaintiffs, to incur substantial costs and expenses in an amount to be proved at trial.

99.    For the reasons set forth and specifically alleged in paragraph 53, Plaintiffs are entitled to an award of exemplary damages against the Manufacturer Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the completion of additional investigation and discovery, Plaintiffs may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests a trial of this action before a

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND OTHER RELIEF**

jury, and that, upon a favorable verdict, this Court enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, as follows:

      a.     An award of compensatory damages according to proof;

      b.     An award of exemplary damages in an amount sufficient to punish Manufacturer Defendants Dow and Shell, and to deter them from ever committing the same or similar acts;

      c.     In the alternative or in addition to an award of damages, as appropriate, an order for abatement of the nuisance;

      d.     An order awarding Plaintiffs their costs in prosecuting this action, including its reasonable attorneys' fees, together with prejudgment interest to the full extent permitted by law; and

      e.  Such other further relief as the Court may deem just and proper.

DATED:  December 11, 2020        Respectfully submitted,

By:    /s/ *Kenneth A. Sansone*
        Kenneth A. Sansone SBN 319982
        Seth D. Mansergh SBN 274892
        SL ENVIRONMENTAL LAW GROUP, PC
        175 Chestnut Street
        San Francisco, CA 94133
        Telephone: (415) 348-8300
        Facsimile: (415) 348-8333

        Attorneys for Plaintiffs CITY OF CORONA and CORONA UTILITY AUTHORITY